UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTO SOLORZANO,<br><br>           Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br><br>           Defendant. | Case No. ED CV 11-369-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his application for Supplemental Security Income ("SSI"). He claims that the Administrative Law Judge ("ALJ") erred when he failed to properly consider: (1) Global Assessment of Functioning ("GAF") scores; (2) a social worker's opinion; (3) Plaintiff's mother's testimony; (4) the consulting psychiatrist's opinion; and (5) the vocational expert's testimony. For the reasons discussed below, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this decision.

## II. SUMMARY OF PROCEEDINGS

In December 2007, Plaintiff applied for SSI, alleging that he was disabled due to schizophrenia. (Administrative Record ("AR") 52-58, 68, 335.) The Agency denied the application initially and on reconsideration. (AR 25-36.) Plaintiff then requested and was granted a hearing before an ALJ. Plaintiff appeared with counsel and testified at the hearing on January 22, 2010. (AR 332-53.) The ALJ subsequently issued a decision denying benefits. (AR 13-22.) Plaintiff appealed to the Appeals Council, which denied review. (AR 4-6.) He then commenced this action.

## III. ANALYSIS

### A. The GAF Scores

Throughout the course of his treatment, various mental health professionals assigned Plaintiff GAF scores, ranging from a low of 21 to a high of 55. (AR 173-331.) The ALJ generally acknowledged the existence of these scores but found them of limited evidentiary value because they were subjective and revealed only a snapshot of Plaintiff's then-current condition. (AR 19.) The ALJ put more emphasis on "the objective details and chronology of the record," which he believed "more accurately describe[d Plaintiff's] impairments and limitations." (AR 19-20.)

Plaintiff takes exception to the ALJ's treatment of the GAF scores. He argues that it was not proper for the ALJ to brush all of the scores aside with a single stroke of the pen and that more specificity was required. (Joint Stip. at 5-6.) He argues further that the ALJ's reasons for rejecting the scores--i.e., that they were subjective, captured only a snapshot in time, and were inferior to the more detailed records--was not sufficient to justify the ALJ's

conclusion. (Joint Stip. at 9-15.) For the following reasons, the Court disagrees.

GAF scores are a tool used by mental health professionals to quantify in a single measure a patient's overall level of functioning at a given moment in time. *See* Diagnostic and Statistical Manual of Mental Disorders, Fourth Ed., Text Revision ("DSM-IV-TR") at 32. As a general rule, an ALJ is not required to consider GAF scores in assessing a claimant's ability to work. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the [residual functional capacity], it is not essential to the [residual functional capacity]'s accuracy. Thus, the ALJ's failure to reference the GAF score in the [residual functional capacity], standing alone, does not make the [residual functional capacity] inaccurate."). Arguably, however, GAF scores can be probative of a claimant's mental health on a given day and should at least be acknowledged by the ALJ. *See*, *e.g.*, *Hacker v. Astrue,* 2008 WL 4224952, at *5 n.2 (W.D. Okla. 2008) ("[I]t was error for the administrative law judge to not at least address the GAF scores and explain why they were not relevant.")

The ALJ acknowledged that there were GAF scores in the record and explained why he was not relying on them. This was more than he was required to do. As such, he did not err.

Plaintiff disagrees. He argues that the ALJ was required to provide compelling reasons for discounting the scores and that he failed to do so. This argument is rejected because there is no such requirement. *Howard,* 276 F.3d at 241. Even assuming that the ALJ was required to provide reasons for discounting the scores, the ALJ's justification here was sufficient to satisfy that burden. Clearly, as

Plaintiff acknowledges, GAF scores are subjective and capture only a brief moment in a claimant's overall course of treatment. The ALJ's election to put more emphasis on objective findings from a longitudinal perspective is a reasonable one that the Court will not second-guess.

Plaintiff argues that the Court's ruling in *Dempster v. Astrue*, 2008 WL 4381541 (C.D. Cal. Sept. 23, 2008), supports his argument that reversal is mandated here. Again, the Court disagrees. There, the Court made clear that, had the ALJ not erred in other ways, it would not have remanded the case based on the ALJ's failure to mention the GAF score assessed by the plaintiff's treating psychiatrist. In fact, in *Dempster*, the ALJ had overlooked the treating psychiatrist's records altogether, which compelled remand. *Id.* at *2. Here, the ALJ discussed the treating psychiatrist's records and acknowledged the GAF scores. As such, the Court finds *Dempster* inapposite. For all these reasons, this claim fails.

B.   The Social Worker's Report

Plaintiff was treated at times by a social worker who provided counseling and therapy for his schizophrenia. In December 2008, she wrote a letter "To Whom it May Concern," explaining that Plaintiff was being treated at an outpatient clinic for parolees to address his schizophrenia. (AR 286.) In her view, Plaintiff was unable to work due to his condition. (AR 286.) The ALJ discounted the social worker's report because she was not an "acceptable medical source" and because her opinion that Plaintiff was not capable of working was on an issue left to the Agency. (AR 20.) Plaintiff claims that the ALJ erred in doing so. As explained below, the Court finds that, to the extent that the social worker's opinion was her own opinion, the ALJ

4

properly discounted it.  The issue will be remanded, however, to allow the ALJ to determine whether the social worker was, in fact, speaking for the rest of the medical team when she offered her opinion.  If so, the opinion is entitled to deference.  Even if not, however, the ALJ should still consider those portions of the social worker's report that amount to lay testimony of observations by the social worker.

Social workers are not "acceptable medical sources." *Wake v. Comm'r of Soc. Sec.,* 2011 WL 6192763, at *2 (9th Cir. Dec. 14, 2011). As a result, in order to reject the opinion of a social worker, an ALJ need only provide reasons that are germane.  *Id*.  The ALJ provided germane reasons for rejecting the social worker's opinion.  As such, to the extent that the social worker's report consists of her opinion the ALJ did not err in rejecting it.

Acknowledging that the social worker's opinion is not entitled to much weight on its own, Plaintiff argues that the social worker was part of a treatment team, which consisted of psychiatrists and psychologists, and, therefore, her opinion should be elevated to that of an acceptable medical source. (Joint Stip. at 25-26.)  The record is ambiguous on this issue.  Unfortunately, Plaintiff's counsel--counsel from the same firm that represents Plaintiff in this appeal--never mentioned to the ALJ his theory that the social worker's opinion should be accorded the same weight as a doctor's opinion because she was working closely with the doctors.  Thus, the ALJ never explored the issue and the Court is left addressing it for the first time in this appeal.  This is obviously not the best way to handle these issues.  It would have been much better if counsel had suggested this theory to the ALJ during the administrative hearing and allowed the

ALJ the opportunity to consider the issue and, possibly, develop the record regarding it.

Ultimately, however, the Court finds that the record at least arguably supports Plaintiff's claim here. It appears that the social worker was working fairly closely with the doctors who were also treating Plaintiff at this facility. The social worker met with the doctors and Plaintiff in some sessions. (AR 303.) At other times, the doctors and the social workers alternated their sessions with Plaintiff. (AR 300-06.) The notes seem to indicate that the doctors and the social worker were treating Plaintiff as a team, each taking on different responsibilities. (AR 302-06.) That is not to say, however, that the doctors endorsed the social worker's view in December 2008 that Plaintiff was disabled as a result of schizophrenia. Clearly, they never signed off on the opinion. Further development of the record is necessary to resolve the issue. If the ALJ determines that the social worker's relationship was such that her opinion was, essentially, the opinion of the doctors, he should consider it in determining whether Plaintiff is disabled. If the ALJ reaches the opposite conclusion, he need not accept the opinion.

Finally, the Court notes that, though the ALJ properly discounted the social worker's conclusion that Plaintiff was disabled because that is a decision left to the ALJ, he should not have simply ignored the social worker's observations, e.g., that Plaintiff experiences auditory hallucinations and is unable to follow simple directions. *See, e.g., Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) (explaining ALJ must provide germane reasons for discounting lay testimony of witnesses who see claimant only occasionally because

their testimony "still carries some weight"). On remand, he should take these observations into account or explain why he chooses not to.

C. Plaintiff's Mother's Testimony

Plaintiff's mother testified at the administrative hearing that his schizophrenia and delusions made it impossible for him to function. (AR 339-48.) The ALJ rejected this testimony because he found that, as a family member and someone who would benefit from increased income to the household, she was biased. (AR 17.) He also concluded that her testimony was not competent because she was not qualified to diagnose Plaintiff's condition or to opine how it impacted his ability to work. (AR 17.) Plaintiff claims that the ALJ erred in doing so. For the following reasons, the Court agrees.[1]

Testimony from a lay witness who is in a position to observe a claimant's symptoms and daily activities is "competent evidence." *See Smith v. Bowen*, 849 F.2d 1222, 1226 (9th Cir. 1988) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). In order to reject such testimony, an ALJ must provide reasons that are germane to the witness. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." (citations omitted )).

---

[1] Plaintiff's mother also submitted a questionnaire in which she reported that Plaintiff was limited due to his impairment. (AR 93-100.) The ALJ rejected the questionnaire because he found that it simply parroted a similar one submitted by Plaintiff. (AR 17.) Plaintiff does not appear to be challenging this finding. (Joint Stip. at 35-36.)

The ALJ's discounting of the mother's testimony based on the fact that she was related to Plaintiff is arguably a germane reason for questioning her credibility. Generally speaking, ALJs are entitled to employ ordinary credibility evaluation techniques, *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996), and fact finders ordinarily consider the relationship between a witness and a party when assessing the witness's credibility. *See, e.g., Romero v. Tansy*, 46 F.3d 1024, 1030 (10th Cir. 1995) (concluding alibi testimony by a defendant's family members is of significantly less value than that of an objective witnesses); *and see* Ninth Circuit Model Civil Jury Instruction No. 1.11, Credibility of Witnesses ("In considering the testimony of any witness, you may take into account: . . . (4) the witness's interest in the outcome of the case and any bias or prejudice . . . ."). But, at least in this circuit, ALJs are not allowed to consider the fact that the witness is related to the claimant in assessing the witness's credibility. *See Regennitter v. Comm'r of Social Sec.*, 166 F.3d 1294, 1298 (9th Cir. 1999); and *Smolen*, 80 F.3d at 1289 ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony."); *but cf. Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (upholding ALJ's rejection of claimant's former girlfriend's testimony based, in part, on fact she had a close relationship with claimant and was possibly influenced by her desire to help him). Thus, the ALJ erred in discounting the mother's testimony on this premise.

The ALJ's second reason for discounting the mother's testimony--that she stood to gain financially if Plaintiff was awarded SSI--may have been a valid reason for questioning her credibility. *See Valentine v. Comm'r Soc. Sec.*, 574 F.3d 685, 694 (9th Cir. 2009)

("[E]vidence that a specific spouse exaggerated a claimant's symptoms *in order* to get access to his disability benefits, as opposed to being an 'interested party' in the abstract, might suffice to reject that spouse's testimony."). Plaintiff's mother testified that Plaintiff lived with her and that she supported him, his brother, and his father on her income. (AR 347-48.) Thus, there certainly is evidence to support the ALJ's finding that the mother's testimony was subject to scrutiny because she had a financial interest in outcome of the case. And, accepting *Valentine's* ambiguous language that this "might" be enough to support a credibility finding, the Court sides with the ALJ here.

The ALJ also rejected the mother's testimony because he found that it was tantamount to a medical opinion that she was not competent to make. (AR 17.) Here the Court disagrees. Most of the mother's testimony centered on what Plaintiff could and could not do around the house and the efforts she made to motivate him to do his chores and take care of himself. (AR 339-48.) This was competent evidence and the ALJ should not have dismissed it because the mother also offered opinions about Plaintiff's medical condition, which she was not qualified to do. *See Smith,* 849 F.2d at 1226.

In the end, only one of the three reasons the ALJ cited for rejecting the mother's credibility is valid, i.e., that the mother had a financial incentive in the outcome of the case. In this situation, applying a harmless error standard, the Court must determine whether this reason alone amounts to substantial evidence to support the ALJ's credibility finding. *See Carmickle v. Comm'r, Soc. Sec.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding reviewing court must determine whether remaining valid reason(s) for ALJ's questioning of claimant's

credibility amounts to substantial evidence); and *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding court must evaluate ALJ's credibility finding under harmless error standard where some of ALJ's reasons for rejecting credibility are rejected and some are upheld). The Court finds that this reason alone is not enough to support the ALJ's credibility finding, particularly in light of the ambiguous language of *Valentine* that financial incentive "might" be enough to question a witness's testimony. As such, remand is required on this issue.

D.   The ALJ's Reliance on the Examining Psychiatrist

The ALJ relied on the opinion of examining psychiatrist Reynaldo Abejuela to conclude that Plaintiff's psychiatric impairments were not as severe as he claimed and that they did not preclude him from working. (AR 19-20.) Plaintiff contends that this was error because Dr. Abejuela did not have Plaintiff's medical records when he rendered his opinion. (Joint Stip. at 46.) For the following reasons, the Court finds that the ALJ did not err here.

Plaintiff has not cited any authority for the proposition that a consulting doctor, or any doctor, is required to review the medical records of other doctors before rendering an opinion in order for the opinion to be valid. In fact, under controlling Ninth Circuit law, an ALJ is entitled to rely on the opinion of an examining doctor that is supported by independent clinical findings. *Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007); *see also Castaneda v. Astrue*, 344 Fed. App'x 396, 398 (9th Cir. 2009) (holding ALJ did not err in relying on examining doctor's assessment, even if doctor did not review all medical records). Clearly, Dr. Abejuela examined Plaintiff and performed some rudimentary tests in order to gauge Plaintiff's

condition. (AR 238-45.) Thus, his opinion was supported by independent clinical findings and the ALJ's reliance on it was not in error. This is particularly true in the context of this case where the treatment records that Dr. Abejuela did not consider were based almost exclusively on Plaintiff's claimed, often feigned, symptoms. For example, as the ALJ pointed out, in order to avoid being transferred from one jail facility to another, Plaintiff falsely claimed to jail staff that he was hearing voices. (AR 178 (chart note records Plaintiff's statement to jail social worker that he was on methamphetamines while in jail and, when told he was being transferred to Orange County Jail, falsely claimed that he was hearing voices so he could stay where he was).) The ALJ rejected Plaintiff's testimony and found that he was not credible. Plaintiff has not challenged that finding and it is, therefore, binding in this case. Thus, the records Plaintiff complains Dr. Abejuela failed to consider are of limited value. In this situation, the Court cannot find error in the doctor's failure to consider them.

E.   The Vocational Expert's Testimony

Finally, Plaintiff takes exception to the vocational expert's testimony that he was capable of working. He argues that the testimony was infirm because the ALJ failed to include in the hypothetical question to the vocational expert limitations reflected in the GAF scores and the social worker's opinion and instead relied on the limitations expressed by Dr. Abejuela. (Joint Stip. at 50.) The Court has already rejected Plaintiff's arguments relating to the GAF scores and Dr. Abejuela. As to the social worker's opinion, if, on remand, the ALJ determines that her opinion is entitled to some

weight, he should take it into account in formulating Plaintiff's residual functional capacity.

Plaintiff also objects to the vocational expert's testimony on the ground that he failed to testify that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Joint Stip. at 50-51.) Plaintiff argues that there are "apparent conflicts" between the vocational expert's testimony and the DOT, which should have been explained. (Joint Stip. at 51.) This argument is rejected for two reasons. First, Plaintiff was represented by counsel at the administrative hearing and, in fact, counsel questioned the vocational expert. Yet he never asked the vocational expert about any conflicts with the DOT, apparent or otherwise, and never prodded the ALJ to do so, either. (AR 50-51.) If these conflicts were so apparent, counsel should have pointed them out at that time and not waited until now to raise the issue. Failure to do so is tantamount to inviting error. This is particularly true in the context of social security cases like this one where counsel from this firm routinely ask for fees in excess of $500 per hour, sometimes in excess of $1,000 per hour, for their work in these cases, signifying among other things their obvious expertise in the field. Counsel are not supposed to be potted plants at administrative hearings. They have an obligation to take an active role and to raise issues that may impact the ALJ's decision while the hearing is proceeding so that they can be addressed.

Second, though Plaintiff speaks of "apparent" conflicts, he does not identify a single one, even in his response to the Agency's argument that no such conflicts exist. (Joint Stip. at 50-54.) Apparently, Plaintiff thinks it is incumbent on the Court to read the DOT and determine if any conflicts exist. Plaintiff is mistaken. It

is his obligation to set forth in his brief a persuasive argument as to why remand is warranted on this issue. He has not done so. The Court will presume that the reason he has not identified a single conflict in the 55-page joint stipulation he filed in this case is because there is none. As such, any error committed by the ALJ in failing to ask the vocational expert if there was a conflict is harmless and does not merit remand. *Massachi v. Astrue*, 486 F.3d 1149, 1154 n.19 (9th Cir. 2007) (explaining ALJ's failure to inquire about conflicts with DOT is harmless if there is no conflict).[2]

## IV. CONCLUSION

For the reasons set forth above, the Agency's decision is reversed and the case is remanded for further proceedings.

IT IS SO ORDERED.

DATED: January 10, 2012.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\SOLORZANO, 369\Memorandum Opinion and Order.wpd

---

[2] The Court has considered the occupations identified by the vocational expert and accepted by the ALJ that Plaintiff can perform and does not find any apparent or actual conflicts between Plaintiff's functional capabilities and these jobs.